Josephine **DORSE**, as Personal Representative of the Estate of Alfred Dorse, et al., Plaintiffs-Appellees,

v.

**ARMSTRONG WORLD INDUSTRIES, INC.**, et al., Defendants,

Eagle-Picher Industries, Inc., Defendant-Appellant.

No. 85–5334.

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1986.

Susan J. Cole, Coral Gables, Fla., Joe G. Hollingsworth, Washington, D.C., for defendant-appellant.

Louis S. Robles, Miami, Fla., for Alfred Dorse.

Jane N. Saginaw, Charles S. Siegel, Dallas, Tex., for Josephine Dorse.

Before HILL, Circuit Judge, HENDERSON * and BROWN **, Senior Circuit Judges.

HILL, Circuit Judge:

This is an appeal from a final judgment entered in favor of plaintiff-appellee in a wrongful death/survival statute action predicated on various products liability theories. The suit alleged that defendant-appellant (among others) was liable to plaintiff, in her own right and on her decedent's behalf, for manufacturing and selling asbestos-containing products to which plaintiff's decedent was exposed. We have determined that this case presents a controlling question of law which should be certified to the Florida Supreme Court.

## FACTS

Plaintiff and her decedent filed suit in federal district court in 1982 against ten corporations, including Eagle-Picher, that are alleged to have manufactured or distributed asbestos-containing insulation products to which the decedent was exposed in the course of his employment as a coppersmith constructing naval vessels in Brooklyn, New York. That exposure allegedly caused the decedent to contract certain asbestos-related diseases. Plaintiff's amended complaint (filed after decedent died during the pendency of this litigation) seeks recovery under Florida's wrongful death and survival statutes for injuries she suffered personally and as representative of decedent's estate. Plaintiff's cause of action is predicated on products liability theories sounding in negligence, strict liability (including failure to warn) and breach of implied warranty.

In answer to plaintiff's claims, Eagle-Picher asserted the "government specification defense," an affirmative defense premised on the apparently undisputed allega-

---

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

tion that Eagle-Picher manufactured and sold the asbestos-containing thermal insulation cement to which plaintiff's decedent was exposed to the United States Navy and the New York Naval Shipyard pursuant to federal government contracts and in strict compliance with mandatory government contract specifications.[1] Eagle-Picher further asserted that the government's knowledge of the hazards of exposure to asbestos-containing insulation products was equal to or greater than Eagle-Picher's knowledge of those hazards. Plaintiff denies this assertion and claims further that Eagle-Picher manufactured asbestos-containing products like those at issue in this case prior to the promulgation of the government specifications to which it refers, and that Eagle-Picher participated substantially in the drafting of those specifications.

Eagle-Picher filed a motion for summary judgment on the grounds that it had satisfied each element of the government specification defense. Following a hearing, that motion was denied on the grounds that the Florida courts have not yet "explicitly recogniz[ed] and appl[ied] the government specification defense" in strict liability cases. The court further noted that, notwithstanding the absence of Florida authority for Eagle-Picher's position, there existed genuine issues of material fact that rendered the entry of summary judgment inappropriate even if the defense could be asserted.[2] The district court denied Eagle-Picher's motion for reconsideration of its

decision and granted plaintiff's motion to strike the government specification defense from Eagle-Picher's answer, stating that "there are no Florida cases which have explicitly recognized or applied the government specification defense," and that Eagle-Picher had not cited "persuasive authority" for the proposition that the Florida courts would "likely adopt" the defense.

The parties subsequently filed a "Stipulation for Judgment" requesting that there be incorporated into that judgment (1) final judgment in favor of plaintiff; (2) a determination that the government specification defense is not available under Florida law; and (3) the previous order striking the defense. The district court approved the stipulation and entered an Order Directing Entry of Final Judgment. This appeal followed.

## DISCUSSION

This case is greatly complicated by the awkward procedural posture in which it has reached this court. Appellant claims the district court erred in striking the government specification defense. The district court's determination that the government specification defense would not be available to appellant at trial undoubtedly influenced the decision of the parties to agree to settle this case as they have in the district court. A threshold question we must address, however, is the effect on our ability to review this case of the fact that the parties consented to entry of the judgment appellant seeks to set aside.[3]

---

1. The "government specification defense" is more commonly referred to as the "government contractor defense." We refer to it principally as the government specification defense because that is the terminology used by appellant, who sought to assert the defense, and by the district court.

2. The district court indicated that there existed genuine issues of material fact concerning the relative knowledge of Eagle-Picher and the United States government regarding the hazards associated with occupational exposure to asbestos. Eagle-Picher had argued in its motion for summary judgment that it was entitled to judgment as a matter of law on the government specification defense because the harm-causing product was manufactured according to mandatory

government specifications and because the government's knowledge of the hazards of exposure to asbestos-containing products was equal to or greater than Eagle-Picher's knowledge. Appellant does not challenge the district court's finding of that issue of material fact on this appeal.

3. Although this issue may be thought to be an issue of standing, it has been suggested that the applicable principle is instead waiver of error. *See* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3902, at 408 (1976). Because we find no such bar to our consideration of the merits of this appeal, we need not decide whether dismissal of the appeal for lack of standing or affirmance of the decision would be required.

Where the parties have agreed to entry of an order or judgment without any reservation relevant to the issue sought to be appealed, one party may not later seek to upset the judgment, unless lack of "actual consent" or a failure of subject matter jurisdiction is alleged. *Swift & Co. v. United States,* 276 U.S. 311, 314, 48 S.Ct. 311, 72 L.Ed. 587 (1928). *See also Haitian Refugee Center v. Civiletti,* 614 F.2d 92 (5th Cir.1980) (party may not appeal from an injunction to which it agreed without reservation). One binding Fifth Circuit case, *Amstar Corp. v. Southern Pacific Transport Co.,* 607 F.2d 1100 (5th Cir.1979) (per curiam), *cert. denied,* 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980), has held that appellate review is unavailable even if the consent judgment includes an express recognition of the intent of one of the parties to appeal the issue sought to be appealed. Justice Blackmun, dissenting from the denial of certiorari in *Amstar,* has suggested that this case was wrongly decided, as it "ignores the parties' intent in executing a consent to a judgment and in their subsequent actions thereto." 449 U.S. at 924, 101 S.Ct. at 327. In Justice Blackmun's view, "petitioner [was] entitled to a ruling on the merits of its appeal to the Court of Appeals, and [was] not to be foreclosed by a strict concept of consent and acceptance in the face of facts that the asserted consent was specifically limited and that petitioner consistently and persistently disclaimed full settlement of the lawsuit." 449 U.S. at 927, 101 S.Ct. at 329. Justice Blackmun appears to consider those facts sufficient to raise "a claim of lack of actual consent." 449 U.S. at 926, 101 S.Ct. at 328 (quoting *Swift,* 276 U.S. at 314, 48 S.Ct. at 311). *See also* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3902, at supp. p. 214 n. 26 (1985 Supp.).

Justice Blackmun's view finds support by analogy in the context of appeals from dismissals that were voluntarily sought for the purpose of obtaining appellate review of otherwise interlocutory orders. In *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the government had filed a civil antitrust suit against Procter & Gamble, who responded by seeking discovery of the transcript of a recently completed grand jury investigation into the same or similar activity. The district court ordered the government to turn over the transcript within thirty days. The government, adamant in its refusal to obey the court's discovery orders, filed a motion requesting that the court's orders be amended to provide that, if production were not made, the court would dismiss the complaint. Alternatively, the government moved for a stay pending the filing of an appeal and an application for extraordinary writ. The motion was not opposed. The court chose the first alternative, and the complaint was dismissed. Procter & Gamble then urged on appeal that the government could not sue out a writ of error, having voluntarily dismissed its complaint. The Supreme Court found the longstanding rule that "a plaintiff who has voluntarily dismissed his complaint may not sue out a writ of error" inapplicable, reasoning as follows:

> The Government has at all times opposed the production orders. It might of course have tested their validity in other ways, for example, by the route of civil contempt. Yet it is understandable why a more conventional way of getting review of the adverse ruling might be sought and any unseemly conflict with the District Court avoided. When the Government proposed dismissal for failure to obey, it had lost on the merits and was only seeking an expeditious review. This case is therefore like *Thomsen v. Cayser,* 243 U.S. 66, 37 S.Ct. 353, 61 L.Ed. 597, where the losing party got the lower court to dismiss the complaint rather than remand for a jury trial, so that it could get review in this Court. The court, in denying the motion to dismiss, said
>
> > "The plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay." *Id.,*

243 U.S. at page 83, 37 S.Ct. at page 358.

*United States v. Procter & Gamble Co.,* 356 U.S. at 680–81, 78 S.Ct. at 985–86.

*Amstar* also appears to be in conflict with *Greenhouse v. Greco,* 544 F.2d 1302 (5th Cir.1977), which was decided nearly three years before *Amstar* but is not cited therein. In *Greenhouse,* plaintiffs from more than one parish within a single Roman Catholic diocese in Louisiana filed a lawsuit alleging unconstitutional racial segregation and discrimination in the parochial schools within the diocese. The district court entered various orders which had the effect of narrowing the suit to the parochial schools in only one parish, whose two schools were unified shortly thereafter. The district court noted in the second of its orders that the plaintiffs intended to appeal the validity of the orders narrowing the case. *Greenhouse v. Greco,* 368 F.Supp. 736, 737 (W.D.La.1973). The plaintiffs' subsequent appeal was dismissed on the grounds that the orders appealed from were interlocutory and non-appealable. *Greenhouse v. Greco,* 496 F.2d 213 (5th Cir.1974). The plaintiffs then made a motion to the district court, in the form of a letter, suggesting that the case be dismissed as moot. The district court complied and dismissed the case as moot. The plaintiffs once again appealed, seeking review of the orders narrowing the case. Certain of the defendants then moved the court of appeals to dismiss the appeal on the grounds that it was from a non-appealable consent judgment and that the cause was moot. The court of appeals saw the principal problem as determining "whether plaintiffs cut themselves off from their objective of appellate review by seeking, and obtaining," the judgment from which they appealed. 544 F.2d at 1304. The court first observed that the case was not in fact moot and then addressed the defendants' argument that the plaintiffs were barred from appealing the judgment because they had consented thereto as follows:

The doctrine that one may not appeal from a consent judgment does not apply to the situation before us.

By consenting to the judgment that is entered, a party waives his right to appeal from it. He may, however, urge on appeal that his consent was not actually given

9 Moore Federal Practice ¶ 203.06. It is obvious that plaintiffs did not intend by their letter-motion to consent to a judgment that would preclude them from the appellate review the desire for which triggered their request that a judgment be entered.

544 F.2d at 1305.

■ Where circuit authority is in conflict, "we ordinarily reject the precedent that is inconsistent with either Supreme Court cases or the weight of authority within the circuit." *United States v. Hobson,* 672 F.2d 825, 827 (11th Cir.1982). *See also United States v. Gort,* 737 F.2d 1560 (11th Cir.1984); *Manufacturing Research Corp. v. Graybar Electric Co.,* 679 F.2d 1355 (11th Cir.1982); *Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (5th Cir.1981). Where there is no Supreme Court authority on the issue and no clear weight of authority within the circuit, however, "we must resort to common sense and reason" to determine the appropriate rule of law. *United States v. Hobson,* 672 F.2d at 825. In this case, there is no Supreme Court authority that is precisely on point, nor is there any clear weight of authority in the circuit. *Greenhouse v. Greco,* however, appears clearly to be more consistent with analogous Supreme Court authority. Moreover, we consider it to represent the more appropriate response to the factual circumstances at issue here. The stipulation for judgment that was approved by the court and served as the basis for the court's order directing entry of final judgment expressly recognized Eagle-Picher's intent to appeal from the final judgment, claiming that the court erred in determining that the government contract defense was unavailable in this action and that it should be stricken from

the defendant's answer.[4] We see no reason why that intent should be frustrated in this case.

■ Having determined that the merits of this appeal are properly before this court for decision, we find a dearth of Florida authority on the question we are asked to decide. We have therefore determined that we should certify this controlling question of state law to the Florida Supreme Court.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO SECTION 25.031, FLORIDA STATUTES, AND RULE 9.150, FLORIDA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Eleventh Circuit that the above-styled case involves a question of state law that is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida. This court therefore certifies the following question of Florida law to the Supreme Court of Florida for instructions concerning such question of law, based on the facts recited herein.

### I. STYLE OF THE CASE

The style of the case in which this certification is made is as follows: *Josephine Dorse, as Personal Representative of the Estate of Alfred Dorse, et al., Plaintiffs-Appellees, v. Armstrong World Industries, Inc., et al., Defendants, Eagle-Picher Industries, Inc., Defendant-Appellant,* Case No. 85–5334.

### II. STATEMENT OF FACTS

The facts are stated above in our opinion resolving the question of whether the merits of this appeal are properly before this court for decision; we incorporate them herein by reference.

### III. QUESTION TO BE CERTIFIED TO THE SUPREME COURT OF FLORIDA

May the defendant in a strict products liability case avoid liability by alleging and showing that (1) it manufactured and supplied its product in accordance with mandatory specifications set forth in government contracts, and (2) it apprised the government of any hazards associated with the product that it knew of and of which the government was not aware?

As we have said many times before, our statement of the question is not designed to limit the inquiry of the Supreme Court of Florida.

[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

---

4. The stipulation included the following language:

... The parties acknowledge that Eagle-Picher does not agree that the foregoing determination [that the defense would be unavailable] (on the basis of which the Trial Judge has ordered allegations relating to the government contract defense stricken from Eagle-Picher's answer herein) is legally correct.

. . . .

Nothing contained in this Stipulation shall preclude Eagle-Picher from filing an appeal from the final judgment herein, on the grounds (a) that the Trial Judge's determination that the government contract specification defense is unavailable to Eagle-Picher herein is erroneous, (b) that the Trial Judge's order granting plaintiff's motion to strike Eagle-Picher's assertion of the government contract specification defense is erroneous, or (c) both.

*Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The entire record in this case, along with copies of the briefs of the parties, are transmitted herewith.

CERTIFIED.