513 So.2d 1265 (1987)
Josephine DORSE, et al., Plaintiffs-Appellees,
v.
ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants, Eagle-Picher Industries, Inc., Defendant-Appellant.
No. 69319.
Supreme Court of Florida.
October 15, 1987.
*1266 Louis S. Robles, Miami, Charles S. Siegel of Barron & Budd, Dallas, Tex., for plaintiffs-appellees.
Susan J. Cole of Blair & Cole, Coral Gables, Joe G. Hollingsworth and Edward M. Fogarty of Spriggs, Bode & Hollingsworth, Washington, D.C., for defendant-appellant.
BARKETT, Justice.
Pursuant to Florida Rule of Appellate Procedure 9.150, the United States Circuit Court of Appeals for the Eleventh Circuit has certified a question concerning Florida products liability law. Dorse v. Armstrong World Industries, Inc., 798 F.2d 1372, 1377 (11th Cir.1986). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const.
This action was filed in 1982 in federal court against ten corporations that manufactured or distributed asbestos-containing material. One of the original plaintiffs, Alfred Dorse, was exposed to these materials while working as a coppersmith constructing naval vessels in Brooklyn, New York, during and immediately after World War II. This exposure allegedly caused asbestos-related diseases, leading to Alfred Dorse's death after the initial complaint in this action was filed. Josephine Dorse, his wife, subsequently filed an amended complaint seeking recovery under our wrongful death and survival statutes. She based the action on theories sounding in negligence, strict liability (including failure to warn) and breach of implied warranty.
One of the defendants, Eagle-Picher Industries Inc., asserted an affirmative defense heretofore unknown in Florida law, the "government specification defense,"[1] which has been recognized in varying forms and under varying names in a growing number of jurisdictions.[2] It premised this defense on the allegation that Eagle-Picher manufactured and sold asbestos-containing materials to the Navy pursuant to federal government contracts, which, according to Eagle-Picher, required strict compliance with certain contract specifications.
*1267 Eagle-Picher also asserted that the government's knowledge of the hazards posed by asbestos was equal to or greater than that of Eagle-Picher. Plaintiff denies these assertions, claiming that Eagle-Picher manufactured commercial asbestos products like those at issue prior to the promulgation of the government specifications, that Eagle-Picher participated substantially in drafting the specifications, and that Eagle-Picher failed to provide warnings of the dangers associated with asbestos exposure.
The district court, after a hearing, denied Eagle-Picher's motion for summary judgment on the affirmative defense and granted plaintiff's motion to strike the defense from Eagle-Picher's answer.
Subsequently, Eagle-Picher appealed to the Eleventh Circuit. Although the Eleventh Circuit previously had recognized such a defense in federal claims, Shaw v. Grumman Aerospace Corp., 778 F.2d 736, 743 (11th Cir.1985), petition for cert. filed, 54 U.S.L.W. 3721 (U.S. March 17, 1986) (No. 85-1529), the court found "a dearth of Florida authority" on this issue and certified the following question:
May the defendant in a strict products liability case avoid liability by alleging and showing that (1) it manufactured and supplied its product in accordance with mandatory specifications set forth in government contracts, and (2) it apprised the government of any hazards associated with the product that it knew of and of which the government was not aware?
798 F.2d at 1377.
Initially, we note that Florida courts have never addressed the precise issue presented by the certified question. Only once, in Rawls v. Ziegler, 107 So.2d 601 (Fla. 1958), have we ruled on an issue arguably analogous. In Rawls we recognized a contract specification defense that exists where an independent contractor strictly follows the plans, directions or specifications supplied by his employer, whether or not that employer is a sovereign, and has no knowledge and no reason to believe that those plans, directions or specifications pose a danger of harm. Under such circumstances, the duty of care rests on the one able to foresee and prevent the danger inherent in the specifications. Where found to exist, this defense will shield a contractor only from a negligence action, not from strict liability where the duty of care is not an issue. As the Eleventh Circuit has noted, the contract specification defense is not, strictly speaking, a defense at all but an aspect of the negligence elements of foreseeability and duty of care. 778 F.2d at 739. Thus, since Rawls arose from a duty of care, it is inapplicable to a strict liability issue, where the duty of care is not dispositive of liability.
Recognizing that no prior authority exists in this state on this issue, we accordingly must ground our answer to the certified question in principles that harmonize with the law of Florida as well as the general requirements of the United States Constitution and our obligations under its supremacy clause. We note that virtually every jurisdiction addressing this question has recognized the existence of some form of defense by contractors against claims of injury by products produced pursuant to a military contract with the government. E.g., Shaw; In re Air Crash Disaster at Mannheim Germany, 769 F.2d 115 (3d Cir.1985), cert. denied sub nom, Schoenborn v. Boeing Co., 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 891 (1986); Tillett v. J.I. Case Co., 756 F.2d 591 (7th Cir.1985); McKay v. Rockwell International Corp., 704 F.2d 444 (9th Cir.1983), cert. denied, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); McLaughlin v. Sikorsky Aircraft, 148 Cal. App.3d 203, 195 Cal. Rptr. 764 (1983); Sanner v. Ford Motor Co., 144 N.J. Super. 1, 364 A.2d 43 (1976), aff'd, 154 N.J. Super. 407, 381 A.2d 805 (1977), certification denied, 75 N.J. 616, 384 A.2d 846 (1978); Casabianca v. Casabianca, 104 Misc.2d 348, 428 N.Y.S.2d 400 (Sup.Ct. 1980). Those jurisdictions declining to apply the defense have done so based upon the special facts of particular cases, frequently in asbestosis cases like the one at bar, but have not specifically rejected the defense itself. E.g., Hansen v. Johns-Manville Corp., 734 F.2d 1036 (5th Cir.1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 814 (1985) (applying Texas law); Nobriga v. *1268 Raybestos-Manhattan, Inc., 67 Haw. 157, 683 P.2d 389 (1984).
We are persuaded by the weight of authority, and conclude that a defense similar to that asserted by Eagle-Picher  a "military contractor's defense"  should be recognized under the law of this state. We do not find, as some courts have suggested,[3] that this defense arises from the doctrine of sovereign immunity. To the contrary, an entity or business acting as an independent contractor of the government, and not as a true agent,[4] logically cannot share in the full panorama of the government's immunity. See Bynum v. FMC Corp., 770 F.2d 556, 564 (5th Cir.1985). Accord Yearsley v. W.A. Ross Construction Co., 309 U.S. 18, 21, 60 S.Ct. 413, 414, 84 L.Ed. 554 (1940) (recognizing contract specification defense where contractor is an "agent or officer of the Government"). It is well settled in Florida that an independent contractor remains liable to his own workers, his principal or third parties for injuries caused by inherently dangerous or latent conditions primarily within the contractor's power to control or avoid, whether or not the principal can be sued and whether or not the principal has accepted the services or goods in question. See Slavin v. Kay, 108 So.2d 462 (Fla. 1958); Carter v. Livesay Window Co., 73 So.2d 411 (Fla. 1954); Mumby, Stockton & Knight v. Bowden & Rosenthal, 25 Fla. 454, 6 So. 453 (1889); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978); Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978). This conclusion is especially compelling when injuries are caused by means the contractor himself freely chooses to employ or not to employ, such as a failure to provide adequate warnings or safety equipment where the contract itself is silent on these issues. Under such circumstances, the independent contractor himself has become a tortfeasor and does not escape liability merely because his principal, for whatever reason, cannot be sued.
Rather, we agree with the Eleventh Circuit that the theoretical basis of this defense is the federal war-making and defense power, which the constitution has entrusted exclusively to the president and Congress. As the Eleventh Circuit stated:
The military contractor defense is available in certain situations not because a contractor is appropriately held to a reduced standard of care, nor because it is cloaked with sovereign immunity, but because traditional separation of powers doctrine compels the defense.
Shaw, 778 F.2d at 740.
When federal decisions are made that are vital to the national defense, the courts of the several states have no power to alter or modify those decisions, whether by injunction or an award of damages to a private litigant. Lawsuits that impede the war-making and defense power necessarily must fail. We agree with Judge Pratt of the Eastern District of New York when he noted that
[t]he purpose of [the] defense ... is to permit the government to wage war in whatever manner the government deems advisable, and to do so with the support of suppliers of military weapons. Considerations *1269 of cost, time of production, risks to participants, risks to third parties, and any other factors that might weigh on the decisions of whether, when, and how to use a particular weapon, are uniquely questions for the military and should be exempt from review by civilian courts.
In re "Agent Orange" Product Liability Litigation, 534 F. Supp. 1046, 1054 n. 1 (E.D.N.Y. 1982) (hereinafter, "Agent Orange").
The constitution imposes a clear duty upon this state and its judiciary to refrain from acts that will disrupt the defense of the United States. Discretionary military decisions may not be inhibited by judicial acts issuing from our courts, since the state judiciary is vested with none of the nation's defense powers. The fact that the conduct in question, in a civilian context, would be tortious does not in any way diminish the importance of allowing the military an unfettered hand in conducting military activities, so long as those activities indeed are vital to the defense.
On the other hand, decisions primarily within the discretion of a private independent contractor enjoy no such protection. We find this to be the crucial distinction between those instances in which the military contractor's defense may be asserted in Florida and those in which it may not. As the Eleventh Circuit has stated:
The over-riding objective ... is to determine whether or not a military judgment to go ahead with a dangerous design was actually made. If so, the contractor that created or helped create the design is absolved from judicially-imposed liability. If not, then the contractor is subject to the customary strictures of product liability law.
Shaw, 778 F.2d at 746.
We are persuaded that the test established by the Eleventh Circuit in Shaw should be the test used in Florida for establishing a military contractor's defense in a products liability action:
A contractor may escape liability only if it affirmatively proves: (1) that it did not participate, or participated only minimally, in the design of those products or parts of products shown to be defective; or (2) that it timely warned the military of the risks of the design and notified it of alternative designs reasonably known by the contractor, and that the military, although forewarned, clearly authorized the contractor to proceed with the dangerous design.
Id.
To be able to assert this defense, then, an independent contractor affirmatively[5] must show that the decision to confront or create a known material risk essentially was made by the military. As a corollary, the contractor must show compliance with the specifications material to the dispute at bar that were precisely prescribed and required by a contract between it and the government. If the specifications are not precise and leave the contractor with substantial discretion, then the contractor must shoulder strict liability to the extent its exercise of that discretion has caused an injury.
Moreover, the defense is inappropriate where the contract in question is to supply services or goods of a commercial, nonmilitary nature. While the question of what goods are "commercial" is not subject to a bright-line test, we find that goods are commercial and not military in nature when they are the same or substantially similar to goods produced for sale to nonmilitary buyers. If the military is only one outlet in a larger market, the policies of strict liability will continue to require that the enterprise itself must bear the cost of the injuries it produces. It would be absurd to permit one injured party to recover damages because he was injured by a product sold in the marketplace while another is denied recompense solely because he was injured by the same or a substantially similar *1270 product produced for a military purchaser.
Finally, we stress that the contractor also must prove that it provided timely warnings of every reasonably known material risk inherent in the proposed specifications and every reasonably known material alternative for avoiding or reducing such risks, that were unknown to the military. Risks and alternatives are "reasonably known" if they are "either actually known, or reasonably ought to be known given good design practice in the industry." See Shaw, 778 F.2d at 746.[6]
As Judge Pratt stated,
Public policy does require ... that the military's decisions on ... vital [military] questions should at least be made on the basis of the readily available information. A supplier should not be insulated from liability for damages that would never have occurred if the military had been apprised of hazards known to the supplier. A supplier, therefore, has a duty to inform the military of known risks... .
Agent Orange, 534 F. Supp. at 1055.
Accordingly, we conclude that a military contractor's defense as described in the foregoing exists in Florida, and we hereby transmit this opinion to the Eleventh Circuit for further proceedings.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] "Government contractor defense" apparently is the more common label for this affirmative defense. The term "government specification defense" apparently was used by appellant and the federal district court below. See Dorse v. Armstrong World Indus., Inc., 798 F.2d 1372, 1374 n. 1 (11th Cir.1986). This label is misleading, since the defense is only applicable in cases involving military contracts. The Eleventh Circuit has more accurately labeled it the "military contractor's defense." See Shaw v. Grumman Aerospace Corp., 778 F.2d 736, 739 n. 3 (11th Cir.1985), petition for cert. filed, 54 U.S.L.W. 3721 (U.S. March 17, 1986) (No. 85-1529).
[2] See Rivkin, The Government Contract Defense: A Proposal for the Expeditious Resolution of Asbestos Litigation, 17 Forum 1225 (1982); Rivkin & Silberfeld, Compliance with Product Specifications: Shield or Sword?, 17 Forum 1012 (1982); Tobak, A Case of Mistaken Liability: The Government Contractor's Liability for Injuries Incurred by Members of the Armed Forces, 13 Pub.Cont.L.J. 74 (1982); Note, The Government Contract Defense: Should Manufacturer Discretion Preclude Its Availability?, 37 Maine L.Rev. 187 (1985); Casenote, Shoenborn v. Boeing Co.: The Government Contractor Defense Becomes a "Windfall" for Military Contractors, 40 U.Miami L.Rev. 287 (1985); Note, Government Contract Defense: Sharing the Protective Cloak of Sovereign Immunity After McKay v. Rockwell International Corp., 37 Baylor L.Rev. 181 (1985); Note, The Government Contractor Defense and Manufacturers of Military Equipment, 21 Houston L.Rev. 855 (1984); Comment, Strict Product Liability Suits for Design Defects in Military Products: All the King's Men; All the King's Privileges?, 10 U. Dayton L.Rev. 117 (1984); Note, McKay v. Rockwell International Corp.: No Compulsion Required for Government Contractor Defense, 28 St. Louis U.L.J. 1061 (1984); Comment, The Government Contract Defense: An Overview, 27 Howard L.J. 275 (1984); Note, Liability of a Manufacturer for Products Defectively Designed by the Government, 23 B.C.L.Rev. 1025 (1982); Comment, Agent Orange and the Government Contract Defense: Are Military Manufacturers Immune from Products Liability?, 36 U. Miami L.Rev. 489 (1982); Note, The Government Contract Defense in Strict Liability Suits for Defective Design, 48 U.Chi.L.Rev. 1030 (1981).
[3] E.g., McKay v. Rockwell Int'l Corp., 704 F.2d 444, 449 (9th Cir.1983). See also Note, Government Contract Defense: Sharing the Protective Cloak of Sovereign Immunity After McKay v. Rockwell Int'l Corp., 37 Baylor L.Rev. 181 (1985); Note, Sovereign Immunity  The Government Contractor Defense: Preserving the Government's Discretionary Design Decisions  McKay v. Rockwell International Corp., 57 Temple L.Q. 697 (1984).
[4] A person or entity may share in governmental immunity only when performing activities within the scope of a true agency relationship with a sovereign. District School Board v. Talmadge, 381 So.2d 698, 702-03 (Fla. 1980). The existence of a true agency relationship depends on the degree of control exercised by the principal. Generally, a contractor is not a true agent where the principal controls only the outcome of the relationship, not the means used to achieve that outcome. Collins v. Federated Mutual Implement & Hardware Ins. Co., 247 So.2d 461 (4th DCA), cert. denied, 249 So.2d 689 (Fla. 1971). Moreover, even a true agent himself becomes liable for acts outside the scope of the agency relationship or contrary to the principal's instructions, whether or not the principal can be sued. Tedder v. Riggin, 65 Fla. 153, 61 So. 244 (1913); Wilson v. Fridenberg, 22 Fla. 114 (1886).
[5] As an affirmative defense, the burden of proving each element will rest on the one asserting it. Agent Orange, 534 F. Supp. at 1056.
[6] As the Eleventh Circuit has noted, reasonable knowledge does not imply omniscience. 778 F.2d at 746.