990 So.2d 633 (2008)
UNITED AUTOMOBILE INS. CO., Petitioner,
v.
CUSTER MEDICAL CENTER (a/a/o Maximo Masis), Respondent.
No. 3D06-458.
District Court of Appeal of Florida, Third District.
September 10, 2008.
Rehearing Denied September 10, 2008.
Michael J. Neimand, The Office of the General Counsel, Miami, for petitioner.
Stephens, Lynn, Klein, et al., and Marlene S. Reiss, for respondent.
Before GERSTEN, C.J., and SHEPHERD and ROTHENBERG, JJ.

ON MOTION FOR REHEARING DENIED
SHEPHERD, J.
On Respondent's, Custer Medical Center, (a/o/a Maximo Masis), Motion for Rehearing, we substitute the following corrected opinion for the original and, as corrected, deny rehearing.
Petitioner, United Automobile Insurance Company, seeks certiorari review of a decision of the circuit court appellate division that reverses a directed verdict rendered in United's favor at the conclusion of Custer's case. The trial court's reason for directing the verdict was that United's insured and assignor, Maximo Masis, failed to satisfy a contractual condition precedent under the policy of insurance sued upon, by failing to report for two consecutive independent medical examinations (IMEs) without explanation. The facts presented are not in dispute. We conclude the decision of the circuit *634 court appellate division departed from the essential requirements of law and quash the decision under review.
On January 1, 2002, Masis was injured in an automobile accident. At the time, he was insured for personal injury protection benefits under a United insurance policy with a $10,000 limit. Also in January, Masis sought medical treatment from Custer, and Custer submitted bills for treatment of Masis to United. Custer then sought payment from United.
United responded to Custer's request for payment with a certified letter to Masis' counsel posted on March 27, 2002, notifying him that United had scheduled an IME for his client on April 11. A copy of the letter also was mailed to Masis. Masis did not appear. On April 12, 2002, United scheduled a second IME for April 29, 2002, employing the same methods of notification. Again, Masis failed to appear. Neither Masis nor his counsel communicated with United in response to the notices.
After three weeks had passed from the scheduled date for the second IME, United wrote to Masis' counsel, advising it was denying personal injury protection benefits to Masis as of April 11, 2002, for Masis' failure to appear. On June 20, 2002, Masis' counsel sent United a letter announcing his withdrawal of his representation of Masis. On September 9, 2002, United corresponded further with Masisagain employing certified mailand reiterated that it was declining to afford him personal injury protection benefits coverage because of his failure to attend the scheduled IMEs, "which [are] a condition precedent to any legal action." (emphasis added).[1] Again, there was no response from Masis. Thereafter, Custer, as Masis' assignee, sued United for $1250 in excess of the deductible for services rendered by it, together with attorney fees and costs pursuant to section 627.428, Florida Statutes (2001).
Section 627.736(7), Florida Statutes (2001), provides:
(a) Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians. The costs of any examinations requested by an insurer shall be borne entirely by the insurer.
(b) ... If a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits.
Consistent with the communication that United sought to have with its insured before suit was filed, United's defense at trial was simply that Masis failed to satisfy a reasonably established condition precedent to payment of his medical bills.
A plain reading of this statute makes clear that an insured's submission to an IME is a condition precedent to coverage. Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 304 n. 5 (Fla. 4th DCA 1995) ("A condition precedent is one that is to be performed before the contract becomes effective."). Courts throughout the state that have had applied section 627.736(7) have so held. See United *635 Auto. Ins. Co. v. Prof'l Med. Group, 14 Fla. L. Weekly Supp. 1021, 1021-22 (Fla. Cir.Ct.2007) (stating that section 627.736(7)(a) "makes submission to one or more reasonably set IMEs a condition precedent for reimbursement of medical bills incurred before the termination of benefits, but received after the termination"). See also De Ferrari v. Gov't Employees Ins. Co., 613 So.2d 101, 103 (Fla. 3d DCA 1993) ("Submission to the reasonably requested I.M.E. was a condition precedent to coverage."); United Auto. Ins. Co. v. Zulma, 661 So.2d 947, 948 (Fla. 4th DCA 1995) (indicating that attendance at an IME is a condition precedent).
It is clear in this case that United's requests for Masis to present himself for an IME were not patently unreasonable. See Tindall, II v. Allstate Ins. Co., 472 So.2d 1291, 1293 (Fla. 2d DCA 1985) (concluding that, even where insured testified as to reasons he failed to attend IME, "Tindall offered nothing that would generate even the slightest fact question associated with his refusal to submit to the [IMEs]; Allstate's request was patently not unreasonable[,]" and holding that "the trial court could easily reach this conclusion without considering Allstate's counsel's argument as evidence") (emphasis added). Neither Masis nor his counsel responded to the requests at any time during the nearly two-month period during which United sought to schedule an IME of its insured. On these undisputed facts, the trial court correctly directed a verdict in favor of the insurer. See Griffin v. Am. Gen. Life & Accident Ins. Co., 752 So.2d 621, 623 (Fla. 2d DCA 1999) ("The party seeking to enforce a contract has the burden to prove the satisfaction of a condition precedent to the contract's existence."). We conclude that the circuit court appellate division departed from the essential requirements of law when it concluded otherwise. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) ("A district court [may] exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice."); accord Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 528 (Fla.1995); Combs v. State, 436 So.2d 93, 96 (Fla.1983).
We grant the petition for writ of certiorari, quash the opinion of the circuit court appellate division, and direct that court to reinstate the directed verdict.
Before GERSTEN, C.J., and COPE, GREEN, RAMIREZ, WELLS, SHEPHERD, SUAREZ, CORTIÑAS, ROTHENBERG, LAGOA and SALTER, JJ.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The motion for rehearing en banc is denied.
GERSTEN, C.J., and COPE, GREEN, WELLS, SHEPHERD, SUAREZ, CORTIÑAS, ROTHENBERG, LAGOA and SALTER, JJ., concur.
RAMIREZ, J. (dissenting).
I respectfully dissent from our denial of rehearing en banc because I believe our opinion in this case abandons long standing precedent and abuses the extraordinary remedy of certiorari by granting a writ in this matter.[2] Our opinion quashes *636 a well-reasoned unanimous decision of the circuit court reversing a trial judge who granted a directed verdict at the conclusion of plaintiff Custer Medical Center's case, on an affirmative defense, before the defendant, United Automobile Insurance Company, had put on one scintilla of evidence. Not only was the circuit court eminently correct in reversing such a clear violation of procedure, it relied on numerous decisions out of our Court, as well as the Second and Fifth District Courts of Appeal.
First, the circuit court relied on extensive case law holding that a motion for directed verdict "should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence. The trial judge is authorized to grant such motion only if there is no evidence or reasonable inferences to support the opposing position." Perry v. Red Wing Shoe Co., 597 So.2d 821, 822 (Fla. 3d DCA 1992). The panel opinion fails to explain why the circuit court departed from the essential requirements of law by applying Perry and other cited case law on this issue.
Second, the parties in this case have consistently treated United's issue regarding the failure to submit to a medical examination as an affirmative defense.[3] United has not provided us with a copy of the pleadings, but the circuit court opinion states that "United claimed the affirmative defense that the failure to attend the IME was unreasonable.... Therefore, in the absence of evidence supporting the affirmative defense, the directed verdict was premature." In its petition, United does not quarrel with the circuit court's characterization. The panel opinion fails to explain why the circuit court departed from the essential requirements of law by placing the burden on United to prove its affirmative defense. See, e.g., Dorse v. Armstrong World Indus., Inc., 513 So.2d 1265, 1269 n. 5 (Fla.1987) ("As an affirmative defense, the burden of proving each element will rest on the one asserting it.").
To quash the circuit court opinion, the panel turns what was always an "affirmative defense" into a "condition precedent." This novel approach was neither argued below nor even advocated in the petition for certiorari. Changing the state of the pleadings at the appellate level constitutes, in my view, a clear violation of due process. For support, the panel misquotes the case of Goldman v. State Farm Fire General Insurance Company, 660 So.2d 300, 304 n. 5 (Fla. 4th DCA 1995), for the proposition that "an insured's submission to an IME is a condition precedent to coverage." Op. at 634. Respectfully, footnote 5 of the Goldman opinion does not say that. The entire text of the footnote reads as follows:
Conditions in policies of insurance are part of the consideration for assuming the risk, and the insured, by accepting the policy, becomes bound by these conditions. There are two kinds of conditionsprecedent *637 and subsequent. A condition precedent is one that is to be performed before the contract becomes effective, while a condition subsequent pertains to the contract of insurance after the risk has attached and during its existence. [31 Fla. Jur.2d Insurance § 2563 (2002)]. As a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication. In re Estate of Boyar, 592 So.2d 341 (Fla. 4th DCA 1992).
660 So.2d at 304 n. 5. Clearly, Goldman does not say that medical examinations are a condition precedent to coverage. The closest language is the quotation from Florida Jurisprudence Second that "[a] condition precedent is one that is to be performed before the contract becomes effective." Id. Submitting to a medical examination may be a condition precedent to the issuance of a life insurance policy. See, e.g., Griffin v. Am. Gen. Life & Accident Ins. Co., 752 So.2d 621 (Fla. 2d DCA 1999). But evidently, it is not to obtain PIP benefits. Our panel opinion would seem to require the insured, as a condition precedent, to submit to a medical examination before he purchased the insurance policy, before the accident occurred and before United even requested that he submit to such an examination. That is the problem with recasting an affirmative defense into a condition precedent.
The panel also relies on De Ferrari v. Government Employees Insurance Co., 613 So.2d 101, 103 (Fla. 3d DCA 1993), where we stated that "[s]ubmission to the reasonably requested I.M.E. was a condition precedent to coverage." Obviously this statement cannot be correct because coverage is created when the insurance policy is purchased and medical examinations could only logically take place after a "covered" accident and a proper request is made by the insurer. The term "coverage" refers to the amount and extent of risk covered by the insurer. See Ceballo v. Citizens Prop. Ins. Corp., 967 So.2d 811, 813-14 (Fla.2007); Black's Law Dictionary 814-15 (8th ed.1999). To cover is to protect by means of insurance. See Griffin v. Stonewall Ins. Co., 346 So.2d 97 (Fla. 3d DCA 1977).
The De Ferrari decision involved uninsured motorist benefits only, not PIP benefits.[4]De Ferrari, 613 So.2d at 102. I question the applicability of De Ferrari to PIP cases in light of the subsequent Florida Supreme Court decision in U.S. Security Insurance Co. v. Cimino, 754 So.2d 697 (Fla.2000), which I discuss later. But even if De Ferrari is pertinent in the PIP arena, this case can be distinguished. In De Ferrari, the insured took the position that, because she was only seen by an internist and a chiropractor, the insurer's request for an examination by an orthopedic surgeon was unreasonable. De Ferrari, 613 So.2d at 102. When she filed suit, the insurer raised the failure to submit to the examination as an affirmative defense. Our Court affirmed summary judgment for the insurer. Id. On appeal, the insured evidently did not rely on unresolved factual disputes, but on the argument that "the insurer had never demonstrated that it was prejudiced by the insured's actions." Id. We concluded that "prejudice is not at *638 issue when an insurer's reasonable request for an I.M.E. is refused by an insured." Id. As I discuss later, Custer argued at trial that, because the insured had terminated his treatment and had been medically discharged, the request for an examination was unreasonable and it was entitled to have the jury decide that issue.
I cannot agree with the panel that submission to a medical examination can be viewed as a condition precedent for which a plaintiff has the burden of proof. The parties never made this argument, the pleadings did not treat it that way, and the circuit court properly viewed it as an affirmative defense.
The panel opinion is also wrong on the merits. Until this opinion came out, there was simply no case holding that the failure to attend two scheduled medical examinations, as a matter of law, entitled the insurer to deny PIP benefits. Section 627.736(7)(b) states that "[i]f a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent injury protection benefits." (Emphasis added). By holding that two missed appointments automatically forfeits PIP coverage, the panel is deleting the word "unreasonable" from the statute.
In fact, the panel opinion ignores contrary precedent from our Court. In Universal Medical Center of South Florida v. Fortune Insurance Co., 761 So.2d 386 (Fla. 3d DCA 2000), we reversed a final judgment in favor of an insurer after a bench trial on the same issue, where the trial court found that the insured had unreasonably refused to attend a medical examination. The only distinction between our case and Universal is that in Universal, evidence was presented that the insured's counsel had attempted to cancel the examination because the insured had finished treatment. Similarly, in our case, the insured had finished treatment. Is the intent of our decision then to make counsel's attempt to cancel the determinative factor? If the insurer refuses to cancel the appointment, is it unreasonable to refuse to attend an examination that will serve no purpose?
Moreover, our panel decision runs counter to the Florida Supreme Court's decision in U.S. Security Insurance Co. v. Cimino, 754 So.2d 697 (Fla.2000), a discussion of which is conspicuously absent from our panel opinion. Cimino recognized that an insurer can refuse to attend an unreasonable request for a medical examination:
The language of the contract at issue here and section 627.736 contemplate a situation, such as this one, where the insured "reasonably refuses to submit" to an examination. By using the term "unreasonably refuses to submit" in both the conditions section of the policy and subsection 627.736(b), it is logical to deduce there are scenarios where the insured "reasonably refuses to submit" to the examination.
Id. at 702.
By our decision, the insured is foreclosed from arguing to a jury that the request for a medical examination was unreasonable in this case. The insured was in an accident on January 4, 2002, and filed a PIP application on January 8, 2002. He was discharged from treatment, and a bill was submitted to United on March 26, 2002. The next day, United made its first request for an examination. What possible purpose could be served for such an examination after the insured had been discharged and no further treatment was contemplated? If the medical examination revealed that no further treatment was necessary, how would this assist the insurer in evaluating the claim where no further treatment was contemplated anyway? The panel would force an insured to miss *639 time from work, travel to a doctor's office, sit in a waiting room, and submit to a medical examination that can serve no useful purpose. On the contrary, the only point for making an insured jump through this particular hoop is the hope that the insured will not attend the examination and thereby forfeit all PIP benefits.
The panel opinion ends by paying lip service to the standard of review in granting certiorari reviewthat the circuit court appellate division departed from the essential requirements of law, which the circuit court apparently did by concluding otherwise than our panel opinion. In my opinion, the panel has gone out of its way to create a new legal principle, that the failure to attend two examinations, as a matter of law, constitutes an unreasonable refusal under section 627.736. I believe this holding is contrary to Cimino.
There is an understandable hostility to medical providers who may be abusing the PIP insurance industry. The frequency of insurance fraud in our state has been widely documented. But it is not our function to rewrite legislation or police behavior at the expense of long-established procedural and substantive rules. I therefore dissent from our denial of rehearing en banc.
NOTES
[1] The United policy, Section I, "Personal Injury Protection," Paragraph 2, "Conditions," states: "No action shall lie against [United], unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance Policy...." (emphasis added).
[2] I believe this case qualifies under the strict standard for reviewing motions for rehearing en banc advocated by members of our Court. See Univ. of Miami v. Wilson, 948 So.2d 774, 787 (Fla. 3d DCA 2007) (Shepherd, J., concurring). As explained by Judge Shepherd, "Florida Rule of Appellate Procedure 9.331(d) authorizes motions for rehearing en banc in but two circumstances: (1) `[where] such consideration is necessary to maintain uniformity in the court's decisions,' or (2) `the case is of exceptional importance.'" Id. at 788. I cannot demonstrate that this case is of exceptional importance, although I suspect it is, but I hope to set forth in this opinion why the panel opinion tarnishes uniformity in our precedents.
[3] In so doing, the parties were merely complying with Florida Rule of Civil Procedure 1.120(c), which provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."
[4] Uninsured benefits are materially different from PIP benefits because the claimant must show a permanent injury within reasonable degree of medical probability. See § 627.737(2)(a)-(d), Fla. Stat. (1997). On the other hand, "[t]he purpose of PIP benefits is to provide up to $10,000 for medical bills and lost wages without regard to fault. See, e.g., §§ 627.731, 736, Fla. Stat. (1997)." Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla. 2002).