693 So.2d 593 (1997)
U.S. SECURITY INSURANCE COMPANY, Appellant,
v.
Floriselva SILVA, Appellee.
No. 95-2215.
District Court of Appeal of Florida, Third District.
February 26, 1997.
Rehearing Denied June 4, 1997.
*594 Michael Nuzzo, Miami; Kubicki Draper and David B. Pakula, Miami, for appellant.
Fernando F. Freire, Miami; and Barbara Green, Miami, for appellee.
Before NESBITT, GODERICH and SORONDO, JJ.
SORONDO, Judge.
The Appellant/Defendant, U.S. Security, and the Appellee/Plaintiff, Silva, agreed to a Final Judgment in the County Court in favor of Silva, based on stipulated facts. The County Court, also by stipulation, certified the following question as being one of great public importance:
WHEN A PIP INSURER'S LIABILITY FOR "SUBSEQUENT PERSONAL INJURY BENEFITS" IS DISCHARGED DUE TO THE INSURED'S FAILURE TO ATTEND AN INDEPENDENT MEDICAL EXAMINATION (I.M.E), DOES THE TERM "SUBSEQUENT PERSONAL INJURY BENEFITS" REFER TO (1) BENEFITS FOR MEDICAL BILLS SUBSEQUENTLY INCURRED, OR (2) BENEFITS SUBSEQUENTLY PAYABLE UPON THE INSURER'S RECEIPT OF REASONABLE PROOF OF LOSS AND THE AMOUNT OF EXPENSES AND LOSS INCURRED?
We rephrase the certified question as follows:
WHEN A PIP INSURER'S LIABILITY FOR "SUBSEQUENT PERSONAL INJURY BENEFITS" IS DISCHARGED DUE TO THE INSURED'S FAILURE TO ATTEND AN INDEPENDENT MEDICAL EXAMINATION (I.M.E.), UNDER THE PROVISIONS OF SECTION 627.736(a) and (b), FLORIDA STATUTES, DOES THE TERM "SUBSEQUENT PERSONAL INJURY BENEFITS" REFER TO BENEFITS SUBSEQUENTLY PAYABLE UPON THE INSURER'S RECEIPT OF REASONABLE PROOF OF LOSS AND THE AMOUNT OF EXPENSES AND LOSS INCURRED?
Pursuant to Florida Rules of Appellate Procedure 9.030(b)(4)(A) and 9.160, we have jurisdiction. We answer the certified question, as rephrased, in the affirmative.
The operative facts are the following: On April 24, 1993, Silva was involved in an automobile accident. At the time of the accident, she was insured by an automobile insurance policy issued by U.S. Security. On May 11, 1993, Silva's attorney sent a letter to U.S. Security advising that she was making a claim arising from the automobile accident of April 24, and instructing the insurer to correspond with her attorney in the future. Shortly thereafter, U.S. Security sent a PIP form package to Silva's attorney which included an application for Florida no-fault benefits.
On August 18, 1993, U.S. Security wrote to Silva and her attorney requesting that Silva attend an independent medical examination on August 31, 1993. The parties disagree as to whether Silva called to cancel the scheduled examination. It appears, however, that she must have because on August 26, 1993, U.S. Security again sent letters to Silva and her attorney rescheduling her appointment for the I.M.E for September 2, 1993. Both letters contained the following language: "Failure to attend this examination could jeopardize your client's eligibility for future benefits in accordance with Florida Statute 627.736 Section 7(b)."
Silva did not appear for the September 2 examination. On September 9 and 10, U.S. Security sent letters to Silva and her attorney requesting that Silva attend an I.M.E on September 24, 1993. The letters further stated, "Since your client failed to attend the previous scheduled examination, we have made another appointment for him/her. Please be advised that his/her failure to attend this examination will cause his/her benefits to be suspended as of 9/2/93, the date of the prior appointment."
Silva did not appear for the September 24 examination. Shortly thereafter, U.S. Security notified Silva, through counsel, that it was cutting off benefits effective September 2, 1993. The parties agree that Silva did not give any notice of unavailability to attend the September 2 or September 24 appointments and that she offered no excuse for her failure *595 to attend. In sworn interrogatories she subsequently explained that she had been discharged from further medical treatment as of August 27 and that she would not be claiming payment for any medical services rendered after September 2. The Final Judgment awards Silva six-thousand twenty four ($6,024) dollars.
The independent medical examination requirement contained within Section 627.736(7)(a)-(b), Florida Statutes (1993), reads, in pertinent part, as follows:
Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection benefits, such person shall, upon request of an insurer, submit to mental or the physical examination by a physician or physicians.... If a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits (emphasis added).
The "Conditions" section of Silva's policy, provides:
[The insured] shall submit to mental or physical examinations at the Company's expense when and as often as the Company reasonably requires ... If the person unreasonably refuses to submit to an examination, the Company will not be liable for subsequent personal injury protection benefits (emphasis added).
The question presented requires us to determine whether "subsequent personal injury protection benefits" due and payable to an insured who has failed to attend an I.M.E, refers to treatment rendered subsequent to the failure to attend same or to medical bills which are received by the insurer after the failure to attend but incurred before the I.M.E was scheduled.[1] In the present case, Silva received treatment and incurred medical bills before September 2, 1993, the date U.S Security designated as the cutoff of benefits as a result of her failure to attend the independent medical examination. Silva received no medical treatment after September 2, but her insurer received medical bills thereafter for the medical treatment she received before September 2.
Silva argues that the words "subsequent personal injury protection benefits" as used in the statute and in the contract of insurance, refer only to medical treatment received by the insured after unreasonably refusing to submit to the I.M.E. She submits that the insurer is responsible for medical bills incurred before the termination of benefits as a result of the insured's refusal, but received by the insurer after such termination. We do not agree and reverse the Final Judgment of the trial court.
Simply put, the parties seek to establish the true meaning of the term "benefit" as used in the statute. We agree with U.S. Security that the "benefit" the statute refers to is the payment of medical bills and not medical treatment.
In De Ferrari v. Government Employees Ins. Co., 613 So.2d 101 (Fla. 3d DCA 1993), the insured was injured as a result of an automobile accident with an uninsured motorist. Government Employees Insurance Company (GEICO) notified her that appointments had been scheduled for two independent medical examinations, one with an internist and one with an orthopedic surgeon. The insured attended the appointment with the internist but refused to attend the appointment with the orthopedic surgeon. GEICO promptly advised her that coverage was being denied because of her failure to attend the requested examination. This court concluded that "submission to the reasonably requested I.M.E was a condition precedent to coverage." Id. at 103 [citing, Griffin v. Stonewall Ins. Co., 346 So.2d 97 (Fla. 3d DCA 1977) ]; see also Allstate Ins. Co. v. Graham, 541 So.2d 160 (Fla. 2d DCA 1989).
In Tindall v. Allstate Ins. Co., 472 So.2d 1291 (Fla. 2d DCA 1985), rev. denied, 484 So.2d 10 (Fla.1986), the appellant was injured in an automobile accident. Tindall reported the accident to his insurance company (Allstate) and requested psychiatric and orthopedic treatment. His insurer asked him to *596 undergo an I.M.E as a prerequisite to payment. Tindall refused on the grounds that he did not yet know whether his claim would be accepted or denied. Allstate denied Tindall's claim and filed a complaint for declaratory judgment, alleging that it was in doubt about its legal rights and obligations under the contract. The trial court ultimately ruled that Allstate was justified in refusing to pay Tindall because of his refusal to submit to the I.M.E. Addressing the I.M.E requirement of Section 627.736(7)(b), the court stated:
[T]he unmistakable intent behind the independent medical examination requirement is to provide the insurance company with an opportunity to evaluate whether the benefits should be paid. Thus, an unreasonable refusal of a claimant to submit to an examination alleviates the insurer of any further liability for PIP benefits.
Id. at 1292 (emphasis added).
Finally, in Klipper v. Government Employees Ins. Co., 571 So.2d 26 (Fla. 2d DCA 1990), the Second District Court of Appeal again spoke to this issue:
The medical examination provided by 627.736(7), which arises from the contractual relationship between a consumer and the insurer of his choice, is designed to assist the insurer in evaluating whether it is obligated to pay benefits under its policy.
Id. at 26 (emphasis added).
It is clear to us that the word "benefits" as used in the statute, and in the insurance contract herein, means payments, and not medical treatment as Silva suggests. It is equally clear that the I.M.E. requirement of Section 627.736(7)(b) is intended to give insurers an opportunity to determine the legitimacy of a claim so that an appropriate decision can be made as to whether benefits should be paid.
We do not share Silva's apocalyptic vision of the consequences of our decision. It is apodictic that the potential for fraud at the confluence of the medical, legal and insurance industries is virtually unlimited. Our holding today clarifies a statutory provision we are convinced was intended to protect insurers from those who would defraud them.
Reversed and remanded with instructions that final judgment be entered for appellant.
NOTES
[1] There is no issue in this case as to the reasonableness of the insured's refusal to submit to the IME. Both sides agree that Silva's refusal was unreasonable within the meaning of the statute.