754 So.2d 697 (2000)
U.S. SECURITY INSURANCE COMPANY a/k/a U.S. Security Insurance Company, Inc., Petitioner,
v.
Jeanni M. CIMINO, Respondent.
No. SC93932.
Supreme Court of Florida.
March 9, 2000.
David B. Pakula of Fazio, Dawson, DiSalvo, Cannon, Abers, Podrecca & Fazio, Fort Lauderdale, Florida, for Petitioner.
Tari Rossitto-Van Winkle, Tallahassee, Florida, for Respondent.
QUINCE, J.
We have for review Cimino v. U.S. Security Insurance Co., 715 So.2d 1092 (Fla. 1st DCA 1998), wherein the district court certified conflict with Klipper v. Government Employees Insurance Co., 571 So.2d 26 (Fla. 2d DCA 1990). We have jurisdiction. See Art. V, § 3(b)(3), Fla. Const. We approve the First District's decision in Cimino, because we find that absent a valid reason for denial, an insured is entitled to have an attorney or videographer present at a physical examination. We disapprove the opinion in the conflicting case of Klipper.
Jeanni M. Cimino (Cimino) was injured in an automobile accident and sought benefits pursuant to her personal injury protection (PIP) automobile insurance policy with U.S. Security Insurance Company (Security). Security scheduled a medical examination for Cimino. Pursuant to section 627.736(7), Florida Statutes (1997), and as provided for in a provision in the insurance policy, Security chose the physician. Cimino responded with a request that her attorney be present to videotape the examination with a small, hand-held video camera. Cimino and her attorney reported for the September 2, 1997, examination; however, the physician refused to perform the examination. The physician stated she had been instructed by Security that the attorney could not be present and the examination could not be videotaped.[1] Security rescheduled the examination for September 30, 1997, but warned Cimino that her attorney would not be allowed to attend. Security also advised Cimino that failure to attend the scheduled examination or failure to comply with the required *698 conditions would result in termination of her benefits.
Cimino filed an action for declaratory judgment, seeking to have the trial court determine her rights under the insurance policy and under section 627.736. She also filed a motion for a temporary injunction. On September 29, 1997, an emergency hearing was held, via telephone, on the motion for temporary injunction. The trial court granted the injunction pursuant to a stipulation and with the understanding that the matter would be reconsidered when the parties had sufficient time to prepare. The temporary injunction relieved Cimino of her obligation to attend the rescheduled examination and prohibited Security from terminating benefits or scheduling any further examinations unless Cimino's counsel was allowed to attend and videotape the examination.
Security moved to dissolve the injunction. At a hearing on that motion, Security's primary argument was that the temporary injunction was improperly granted because Cimino had not demonstrated that she would likely prevail on the merits. See City of Jacksonville v. Naegele Outdoor Adver. Co., 634 So.2d 750 (Fla. 1st DCA 1994). Relying upon Klipper v. Government Employees Insurance Co., 571 So.2d 26 (Fla. 2d DCA 1990), where the district court found the insured was not entitled to have a court reporter present during a medical examination conducted pursuant to section 627.736, the trial court ordered the temporary injunction dissolved. Cimino appealed. The First District Court of Appeal reversed the trial court's decision and certified conflict with Klipper. See Cimino v. U.S. Security Ins. Co., 715 So.2d at 1094.
The First District was correct in its finding that Cimino's attorney could be present at her PIP independent medical examination. The presence of an attorney during a medical examination is an issue of first impression that has not be ruled on by this Court. However, the presence of an attorney and other third parties at medical examinations has been addressed in a number of cases in the district courts, at least in the context of Florida Rule of Civil Procedure 1.360[2] and workers' compensation examinations.[3]
As the First District pointed out, the issue of who may be present during medical examinations first arose in the context of examinations pursuant to rule 1.360. See Toucet v. Big Bend Moving & Storage, Inc., 581 So.2d 952 (Fla. 1st DCA 1991)(holding the trial court departed from the essential requirements of the law by prohibiting plaintiff's counsel from attending a rule 1.360 examination); Stakley v. Allstate Insurance Co., 547 So.2d 275 (Fla. 2d DCA 1989)(holding absent a valid reason for denial, a person being examined pursuant to rule 1.360 can have a third party present); Bartell v. McCarrick, 498 So.2d 1378 (Fla. 4th DCA 1986)(holding burden is on the party opposing the presence of a third person at a compulsory medical examination to show why presence should be denied). The Second District additionally found in Broyles v. Reilly, 695 So.2d 832 (Fla. 2d DCA 1997), that the *699 person being examined could have a videographer present during an examination pursuant to rule 1.360. See also Wilkins v. Palumbo, 617 So.2d 850 (Fla. 2d DCA 1993); Collins v. Skinner, 576 So.2d 1377 (Fla. 2d DCA 1991)(both holding a plaintiff in a personal injury suit is entitled to have a court reporter present during a compulsory medical examination). The presence of a third party has also been litigated in the workers' compensation context. See McClennan v. American Building Maintenance, 648 So.2d 1214 (Fla. 1st DCA 1995)(finding that an employer/carrier would have to demonstrate a valid reason to exclude a claimant's attorney from a workers' compensation examination).
On the other hand, there has been little litigation on the issue of third-party attendance at a medical examination conducted pursuant to the terms of the insured's contract with the insurer and section 627.736, Florida Statutes. See Cimino; Klipper. The examination requirements contained within section 627.736(7)(a)-(b), Florida Statutes (1997), are, in pertinent part, as follows:
(a) Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians. The costs of any examinations requested by an insurer shall be borne entirely by the insurer. Such examination shall be conducted within the municipality of residence of the insured or in the municipality where the insured is receiving treatment. If the examination is to be conducted within the municipality of residence of the insured and if there is no qualified physician to conduct the examination within such municipality, then such examination shall be conducted in an area of the closest proximity to the insured's residence. Personal protection insurers are authorized to include reasonable provisions in personal injury protection insurance policies for mental and physical examination of those claiming personal injury protection insurance benefits. An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary.
(b) ... If a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits.
The "Conditions" section of Cimino's insurance policy reads:
[The insured] shall submit to mental and physical examinations at the Company's expense when and as often as the Company may reasonably require. A copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination the Company will not be liable for subsequent personal injury protection benefits.
Additionally, the "Duties After an Accident of Loss" section provides:
A person seeking any coverage or benefit must:
1. Cooperate with us in the investigation, evaluation, settlement of defense of any first party or third party claim or suit. Cooperation includes but is not limited to providing oral, sworn or written statements and submitting, to physical examinations by physicians selected by the company.
The combined effect of the statute and the policy is to allow Security to require Cimino to attend a PIP examination in order to continue receiving her benefits.
*700 In Klipper, the Second District was asked to decide whether a court reporter could be present at such a PIP examination. The Second District declined to draw a parallel between a PIP examination and a rule 1.360 examination. The court reasoned that a rule 1.360 examination presupposes that litigation has been initiated and that the parties are "in an adversarial posture." Klipper, 571 So.2d at 27. The court went on to say this type of examination, provided for under the statute and which arose from the contract of insurance, is conducted to assist the insurer in evaluating the claim made by the insured. Therefore, the court opined PIP examinations were distinguishable from rule 1.360 examinations. See id.
Conversely, in Cimino, the First District relied upon rule 1.360 and workers' compensation examination cases to support the insured's right to have an attorney present at a PIP examination. Citing Toucet v. Big Bend Moving & Storage, 581 So.2d at 953, the court reasoned the adversarial nature of a rule 1.360 examination was a compelling reason to permit counsel to be present. See Cimino, 715 So.2d at 1093. The court noted that the same rationale had been applied in the workers' compensation context. See id. Unable to distinguish a PIP examination from a rule 1.360 or workers' compensation examination, as the Second District had done in Klipper, the First District held an insured had a right to have an attorney present during a required PIP examination. In so holding the court said:
With reference to the first quoted paragraph from Klipper, in Adelman Steel Corp. v. Winter, 610 So.2d 494 (Fla. 1st DCA 1992), we explained, "When resort to an [independent medical examination] is necessary by either party, the parties' relationship is clearly adversarial, and a physician performing an IME should be treated as the requesting party's expert witness...." Id. at 505. We recently reaffirmed this position in Reed v. Reed, 643 So.2d 1180 (Fla. 1st DCA 1994).
Id. at 1094. The First District also certified conflict with Klipper.
The questions underlying the certified conflict between Cimino and Klipper are whether a PIP examination is adversarial in nature, making it analogous to rule 1.360 and workers' compensation examinations, and whether the contract of insurance precludes the insured from making the attendance of a third party a condition of the examination. See Cimino, 715 So.2d at 1094 (reasoning that when a PIP examination is necessary, the relationship is clearly adversarial and finding the presence of a third party not precluded under the statute or contract). But see Klipper, 571 So.2d at 27 (reasoning a PIP examination is not necessarily detrimental or merely a prelude to litigation and holding the insured is not entitled under statute or contract to set additional conditions).
Security argues a PIP examination is nonadversarial in nature. It submits that a PIP examination's main purpose is to assist the insurer in determining whether treatment should continue. See Tindall v. Allstate Ins. Co., 472 So.2d 1291 (Fla. 2d DCA 1985). Conversely, Cimino argues a PIP examination is entirely adversarial in nature because it only comes about when an insurance company is trying to terminate or at the very least is questioning the continuation of an insured's benefits, and the presence of an attorney will level the playing field.
It is well established that Florida follows a liberal view when determining whether attorneys may attend examinations.[4]See *701 Bartell v. McCarrick, 498 So.2d 1378 (Fla. 4th DCA 1986). As a result, the First District concluded the burden should fall on the insurer to exclude an observer. See Broyles v. Reilly, 695 So.2d 832, 834 (Fla. 2d DCA 1997).[5] We agree with this approach. Given Florida's liberal posture with regard to rule 1.360 and workers' compensation examinations, there is no valid reason to require the trial court to apply a different standard for PIP examinations. A PIP examination is a potential step in the direction of litigation. The insured is claiming an entitlement to continued benefits and the insurer is questioning the necessity for same. In order to continue receiving benefits the insured must comply with the requirements of the insurance contract and section 627.736. The insured is required to comply with a PIP examination in order to continue to receive the contractual benefits. The insured and the insurer are certainly not in agreement at this point. Because the potential is there for an adversarial contest, the insured should be afforded the same protections as are afforded to plaintiffs for rule 1.360 and workers' compensation examinations.
We are persuaded by the fact that the doctor conducting the examination will provide a report to the insurance company, which will be the basis of the insurance company choosing to either continue or discontinue benefits. In cases where benefits are terminated based upon the doctor's recommendation and the insured contests the termination, the report, including statements made by the insured to the doctor during the examination, and potentially the doctor's own live testimony about the examination, may be used against the insured. Therefore, it is unfair to place insureds in a position where anything they say may be used to terminate their benefits, but they are not allowed an opportunity to protect themselves. As the court said in Sharff v. Superior Court, 44 Cal.2d 508, 282 P.2d 896 (1955):
Whenever a doctor selected by the defendant conducts a physical examination of the plaintiff, there is a possibility that improper questions may be asked, and a lay person should not be expected to evaluate the propriety of every question at his peril. The plaintiff, therefore, should be permitted to have the assistance and protection of an attorney during the examination. See Williams v. Chattanooga Iron Works, 1915, 5 Tenn. Civ.App. 10, 20-21, affirmed 131 Tenn. 683, 176 S.W. 1031.
282 P.2d at 897. Of course, the attorney's presence during the examination is premised upon a requirement that the attorney not interfere with the doctor's examination.
Security argues that such a decision will make it impossible for insurance companies to find doctors who are willing to perform PIP examinations. However, we find this argument unconvincing in light of the fact that there have been no such problems with rule 1.360 or workers' compensation examinations. See Bartell v. McCarrick (finding an examinee has a right to have a representative present at an examination). Moreover, we are further convinced that any chilling effect on doctors is far outweighed by the positive effects of this decision. The Third District *702 correctly noted "the potential for fraud at the confluence of the medical, legal and insurance industries is virtually unlimited." U.S. Security Ins. Co. v. Silva, 693 So.2d 593, 596 (Fla. 3d DCA 1997). However, by allowing the examination to be observed by a third party or videotaped, the potential for harm to either party is reduced, not increased. As the Second District noted when discussing a rule 1.360 examination in Wilkins v. Palumbo, 617 So.2d at 852:
There is nothing inherently good or bad about the credibility function of an IME. If there is no court reporter or other third party present at the examination, however, a disagreement can arise between the plaintiff and the doctor concerning the events at the IME. Plaintiffs' attorneys are understandably uncomfortable with a swearing contest at trial between an unsophisticated plaintiff and a highly trained professional with years of courtroom experience. They have searched for ways to level the playing field on the credibility issues arising from such examinations.
The same considerations are applicable to a medical examination required by the insured to continue PIP benefits.
The concerns of physicians for conducting examinations without the distraction of third persons cannot outweigh the insured's rights. As the Fourth District noted in Bartell v. McCarrick:
As this court said in Gibson v. Gibson, 456 So.2d 1320, 1321 (Fla. 4th DCA 1984), a case in which we held that the presence of a court reporter should have been allowed at a psychiatric examination: "It is important to note also, that it is the privacy of the petitioner that is involved, not that of the examiner, and if the petitioner wants to be certain that this compelled, although admittedly reasonable, intrusion into her privacy be accurately preserved, then she should be so entitled."
498 So.2d at 1379. Cimino's rights must prevail over the concerns of the examining physician.
Secondly, Security argues that under the terms of the insurance contract the insured cannot set additional conditions for the taking of the examination. On the other hand, Cimino argues there is nothing in the insurance contract or the statute which prevents her from having her attorney present. Cimino's argument is persuasive. The language of the contract at issue here and section 627.736 contemplate a situation, such as this one, where the insured "reasonably refuses to submit" to an examination. By using the term "unreasonably refuses to submit" in both the conditions section of the policy and subsection 627.736(b), it is logical to deduce there are scenarios where the insured "reasonably refuses to submit" to the examination. In a situation where the insured wants an attorney or other third party present at the examination, the burden is on the party opposing the third party's presence to prove that the presence is unreasonable.
For these reasons, the First District's opinion in Cimino v. U.S. Security Insurance Co. is approved, and the opinion in Klipper v. Government Employees Insurance Co. is disapproved.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
NOTES
[1] This fact is fervently disputed by Security. They claim it was the IME physician, without direction from Security, who refused to perform the examination in the presence of the attorney and video camera.
[2] Florida Rule of Civil Procedure 1.360(a) provides the discovery mechanism by which a party may request that another party submit to an examination when the condition that is the subject of the requested examination is in controversy.
[3] Section 440.25(7), Florida Statutes (1997), provides:

(7) An injured employee claiming or entitled to compensation shall submit to such physical examination by a certified expert medical advisor approved by the division or the judge of compensation claims as the division or the judge of compensation claims may require. The place or places shall be reasonably convenient for the employee. Such physician or physicians as the employee, employer, or carrier may select and pay for may participate in an examination if the employee, employer, or carrier so requests. Proceedings shall be suspended and no compensation shall be payable for any period during which the employee may refuse to submit to examination.
[4] In the context of a rule 1.360 examination, or similar procedure, a survey of the states reveals three distinct approaches to third-party attendance. First, some states have found an absolute right to have an observer present during an examination. See Acosta v. Tenneco Oil Co., 913 F.2d 205 (5th Cir.1990); Langfeldt-Haaland v. Saupe Enters., Inc., 768 P.2d 1144 (Alaska 1989); Tietjen v. Department of Labor & Indus., 13 Wash.App. 86, 534 P.2d 151 (1975). The second approach holds that there is no presumptive right to have counsel present at an exam. See McDaniel v. Toledo, Peoria & Western R.R., 97 F.R.D. 525 (C.D.Ill. 1983); Dziwanoski v. Ocean Carriers Corp., 26 F.R.D. 595 (D.Md.1960). Finally, the third approach grants discretion to the trial court to examine the facts and make a ruling on a case by case basis. See Hayes v. District Court, 854 P.2d 1240 (Colo.1993); Wood v. Chicago, Milwaukee, St. Paul & Pac. R.R., 353 N.W.2d 195 (Minn.Ct.App.1984).
[5] As explained in Wilkins, a physician must provide a case-specific reason why an attorney's attendance would disrupt the examination. This reason must be submitted in an affidavit. Then, the insurer must prove, at an evidentiary hearing conducted by the trial court, that no other qualified physician in the area would be willing to perform the exam with the third party present. See Wilkins v. Palumbo, 617 So.2d 850, 854 (Fla. 2d DCA 1993); see also Broyles, 695 So.2d at 834.