963 So.2d 962 (2007)
Grisell BACALLAO, Petitioner,
v.
Jean Raymond DAUPHIN, D.O.; Rogelio Jose Zaldivar, M.D.; Gustavo Martinez-Padilla, M.D.; Gustavo Martinez-Padilla, M.D., P.A.; Primary Care Group Practice Assoc., P.A.; Christina O. Abraham, P.A.; Mary C. Waechter, M.D.; Gregory Fox, D.O.; Arnaldo Villafranca, M.D.; Physicians Associates, P.A.; Camilo Lopez, P.A.; Michael Key, D.O.; Westchester General Hospital, Inc. d/b/a/ Westchester General Hospital; and Preferred Medical Plan, Inc., Respondents.
No. 3D07-475.
District Court of Appeal of Florida, Third District.
September 12, 2007.
*964 Sheldon J. Schlesinger, Fort Lauderdale; Burlington & Rockenbach and Bard D. Rockenbach West Palm Beach, for petitioner.
Dittmar & Hauser and Helen Ann Hauser; DeMahy Labrador Drake Payne & Cabeza and Kenneth R. Drake, for respondents.
Before RAMIREZ, CORTIÑAS, and ROTHENBERG, JJ.

OPINION ON MOTION FOR CLARIFICATION
CORTIÑAS, Judge.
We grant Petitioner's motion for clarification and, accordingly, withdraw our former opinion of May 30, 2007, and substitute in its place this clarifying opinion.
Petitioner, Grisell Bacallao, seeks a writ of certiorari quashing an order compelling her to submit to a neuropsychological examination pursuant to Florida Rule of Civil Procedure 1.360(a)(1) without allowing her counsel to attend the examination and without permitting a video or audio tape of the examination. We grant the petition for certiorari and quash the trial court's order.

*965 Factual Background

Petitioner filed a negligence action against Respondents, Westchester General Hospital and several physicians, alleging that Respondents failed to properly diagnose Petitioner as having a stroke and subsequently failed to treat her for that condition. Respondents requested that Petitioner submit to a neuropsychological examination by their expert, Dr. Bonnie Levin, pursuant to rule 1.360(a)(1). Petitioner filed several objections to the examination which are not at issue in this appeal. Thereafter, Respondents filed a memorandum of law that addressed Petitioner's objections and requested that the trial court prohibit the presence of witnesses at the examination and not allow any video or audio taping of the examination.
The trial court held several hearings on Respondents' request to exclude all third parties from the examination and disallow any taping of the examination. At the evidentiary hearing, Dr. Levin testified that third parties, including Petitioner's counsel, should not be allowed to attend the examination and that the examination should not be taped. Dr. Levin also testified that the presence of a third party as well as video or audio taping of the examination is disruptive, potentially affects the validity of the exam, compromises test security by releasing confidential test materials to the general public, and violates professional and ethical obligations. When Dr. Levin was asked whether there were any other physicians in the area who would conduct a neuropsychological examination with the presence of a third party, Dr. Levin testified that there were others in private practice who advised her that they would be willing to do so solely for financial reasons.
Moreover, the record reflects that Petitioner's counsel previously disrupted a neuropsychological examination conducted on the Petitioner by another physician, Dr. Levine. In a letter addressed to Respondent's counsel, Dr. Levine stated that he was unable to complete the Petitioner's examination because Petitioner's counsel continually objected to his questions and instructed the Petitioner not to answer certain questions.
Relying on literature published in the area of neuropsychology, the arguments of counsel, and Dr. Levin's testimony, the trial court denied all of the Petitioner's objections to the medical examination and granted the Respondents' request to prohibit any third party, including Petitioner's counsel, from attending the examination. In addition, the trial court ordered that no other "distractions" would be allowed during the examination "including, but not limited to, videotaping, audiotaping, two-way mirrors, or any other surreptitious or stealthy manner of eavesdropping on the examination." Petitioner now seeks a writ of certiorari.
To grant a writ of certiorari, we must find "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal." Grooms v. Serv. Max Delivery & Installation, Inc., 953 So.2d 624, 626 (Fla. 1st DCA 2007) (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004)).

I. Departure From the Essential Requirements of the Law
Under Florida law, a party seeking to exclude a third party observer from a compulsory medical examination must (1) provide a case-specific reason why their presence would disrupt the examination and (2) prove at an evidentiary hearing that no other qualified physician can be *966 located in the area who would be willing to perform the examination under such circumstances. See Grooms, 953 So.2d at 626 (granting a petition for writ of certiorari and quashing a trial court's order denying the presence of a videographer at the plaintiff's neuropsychological examination); Byrd v. S. Prestressed Concrete, Inc., 928 So.2d 455, 456 (Fla. 1st DCA 2006) (granting a petition for writ of certiorari and quashing a trial court's order preventing the plaintiff's attorney from attending a psychological examination); Brompton v. Poy-Wing, M.D., 704 So.2d 1127, 1128 (Fla. 4th DCA 1998) (granting a petition for writ of certiorari and quashing a trial court's order precluding the plaintiff's attorney from attending a neuropsychological examination); Freeman v. Latherow, 722 So.2d 885, 886 (Fla. 2d DCA 1998) (granting a petition for writ of certiorari and quashing a trial court's order prohibiting the plaintiff's counsel from monitoring a neuropsychological examination from an adjoining room and prohibiting the examination to be videotaped). It is well-settled in Florida that "[a] trial court departs from the essential requirements of the law when it does not comply with the two-prong test to exclude a third party from a compulsory medical examination." Grooms, 953 So.2d at 626 (citing Lunceford v. Fla. Cent. R.R. Co., 728 So.2d 1239, 1241 (Fla. 5th DCA 1999)).
The party seeking to exclude a third party observer bears the burden of providing case-specific reasons why the trial court should deny the plaintiff's right to have a third party present.[1]See Grooms, 953 So.2d at 626 (citing Broyles v. Reilly, 695 So.2d 832, 833 (Fla. 2d DCA 1997)). Florida courts have found that a neuropsychologist's testimony regarding his or her standards of practice, references to text, and conclusory statements that a third party's presence will render an examination invalid do not constitute case-specific reasons to exclude a third party from a medical examination. Grooms, 953 So.2d at 626 (citing Byrd, 928 So.2d at 459) (finding that the doctor's testimony that his professional standards, the presence of a third party, and the fact that a previous unrelated examination was compromised by a videographer's presence were not case-specific reasons). In Freeman, the court found that testimony offered by a neuropsychologist that an unrelated examination was disrupted by a third party not involved in the case was not a case-specific reason to prohibit a videotaping of the Petitioner's neuropsychological examination. Freeman, 722 So.2d at 886; see also Brompton, 704 So.2d at 1128 (finding that testimony offered by a neuropsychologist that during an examination, in an unrelated case, the plaintiff's attorneys had interfered with the examination was not a case-specific reason). Nevertheless, a third party's presence, particularly an attorney's presence, during a medical examination is premised upon a requirement that the third party will not interfere with the doctor's *967 examination. See U.S. Sec. Ins. Co. v. Cimino, 754 So.2d 697, 701 (Fla.2000) (adopting the holdings of several Florida appellate courts regarding rule 1.360 examinations and concluding that "absent a valid reason for denial, an insured is entitled to have an attorney or videographer present at a physical examination"). Clearly, while the plaintiff has a right to have a third party observer at his medical examination, it is vital to the integrity of the examination and the overall proceedings that the third party comport herself in a professional manner.
Once a party provides a case-specific reason for excluding a third party, the party must establish that no other qualified individual in the area would be willing to conduct the examination with the third party present.[2]Byrd, 928 So.2d at 459 (citing Freeman, 722 So.2d at 886). In Byrd, a doctor testified without contradiction that although he would not perform the examination with Petitioner's counsel present, he knew of two other qualified individuals in the area who would be willing to perform the examination under such circumstances. Byrd, 928 So.2d at 460. The First District in Byrd found that such testimony does not satisfy the second prong of the applicable test. Id. Clearly, where a doctor testifies that another physician would perform the examination under those circumstances, that party has failed to meet its burden of proving that no other qualified individual in the area would be willing to perform the examination given the circumstances.

A. Presence of Counsel
In this case, the trial court's ruling constitutes a departure from the essential requirements of the law because the record reflects that the Respondents failed to satisfy the two-prong test to exclude Petitioner's counsel from the examination.
Addressing the first prong of the test, the Respondents presented a case-specific reason to exclude Petitioner's counsel from attending the examination, namely that Petitioner's counsel had disrupted a previous examination on the Petitioner in this same case by objecting to Dr. Levine's questions and instructing the Petitioner not to answer certain questions. This case is distinguishable from Freeman because, in that case, the doctor testified that a third party, completely unrelated to the case at issue, had disrupted the examination by talking too loudly from another room. In this case, Petitioner's counsel had not behaved professionally at a prior examination of this Petitioner and, perhaps more shockingly, would not guarantee to the trial court that she would behave in an appropriate manner at a future examination.
However, the Respondents failed to meet their burden of satisfying the second prong of the applicable test. The record reflects that Dr. Levin testified at the evidentiary hearing that she was aware of other doctors in the area who, despite violating ethical obligations, would perform the Petitioner's examination with an attorney present. As was true of the testimony in Byrd, Dr. Levin's testimony in this case does not constitute sufficient evidence to *968 establish that no other neuropsychologist in the area would be willing to conduct the examination with Petitioner's counsel present.

B. Video or Audio Taping the Examination[3]
The trial court's ruling also departed from the essential requirements of the law in prohibiting any video or audio recording of the examination as the Respondents failed to satisfy the applicable two-prong test.
Pursuant to the first prong of the test, the Respondents clearly failed to provide case-specific reasons to prohibit a video or audio recording of the examination. The reasons offered by the Respondents included a neuropsychologist's standards of practice, references to text, and general statements that a third party, such as a videographer, would invalidate the examination results and interfere with the examination. These justifications were identical to the ones offered by the doctors in Grooms and Freeman which the courts held were not case-specific reasons for prohibiting videotaping an examination.
Additionally, the Respondents failed to satisfy the second prong of the test. As was the case with respect to the prohibition of third parties, Dr. Levin's testimony that she knew of other neuropsychologists in the area who would perform the Petitioner's examination while it was being recorded does not satisfy the Respondents' burden of proving that no other doctor in the area would be willing to conduct the examination given such circumstances.

II. Material Injury that Cannot be Corrected on Post-Judgment Appeal
In order to be entitled to relief, the Petitioner must also demonstrate that the trial court's ruling results in material injury that cannot be corrected by an appeal after the entry of a final order disposing of the case at the trial level. See Byrd, 928 So.2d at 460 (finding that once the petitioner demonstrated that the order departed from the essential requirements of the law and resulted in material injury for the remainder of the case, he must also show that the injury was one that could not be corrected by an appeal). Florida courts have consistently recognized that the type of injury here is one that may be properly remedied by a writ of certiorari. For example, the Byrd court found that an order which prevented the petitioner's attorney from attending the examination would cause irreparable harm to the petitioner because it would be "virtually impossible in an appeal following entry of a final order to demonstrate how the absence of the requested third party affected the outcome of the examination." Id. (citing Taylor v. Columbia/HCA Doctors Hosp., 746 So.2d 1244, 1245 (Fla. 1st DCA 1999)). Similarly, in Lunceford, the court found that the trial court's order preventing the examination from being videotaped caused irreparable harm to the petitioner because "in a final appeal, it would be almost impossible to determine how the lack of a videotape of the examination affected the ability of petitioner's experts to evaluate the orthopedic examination, and perhaps, impeach the examiner." Lunceford, 728 So.2d at 1241. Here, it would also be impossible to determine how the absence of Petitioner's counsel as well as *969 the lack of a video or audio tape of the examination affected counsel's ability to evaluate Dr. Levin's examination and to impeach Dr. Levin at trial. Thus, we find that the Petitioner demonstrated that the injury is one that cannot be corrected on appeal after the entry of final judgment by the trial court.

Conclusion
We conclude that the Petitioner demonstrated that the trial court's ruling constitutes a departure from the essential requirements of the law because the record reflects that the Respondents failed to satisfy the two-prong test to exclude Petitioner's counsel from the examination and prohibit any video or audio recording of the examination. We also conclude that the Petitioner demonstrated that the ruling results in material injury that cannot be corrected on appeal.
Accordingly, we grant the petition, issue the writ, and quash the trial court's order. However, as we previously stated, a third party's presence, particularly an attorney's presence, is premised on the requirement that the third party not interfere with the examination. In the event such interference occurs, the trial court may take appropriate steps to ensure that Dr. Levin has a reasonable opportunity to complete her examination of the Petitioner. See Byrd, 928 So.2d at 460.
Certiorari granted and order quashed.
NOTES
[1] The trial court stated in its order that, pursuant to our decision in Medrano v. BEC Construction Corp., 588 So.2d 1056, 1057 (Fla. 3d DCA 1991), it had the sound discretion to address the types of discovery rulings at issue in this case. We note that Medrano was decided prior to the Florida Supreme Court and Florida appellate courts concluding that it was the defendant's burden to establish why a third party should not attend the examination. Furthermore, in Medrano, the trial court ordered an audio recording of the examination and we granted the petition for writ of certiorari without prejudice to the plaintiff's proposed use of a non-intrusive videotaping procedure. Id. Thus, while we held that these types of discovery rulings were in the sound discretion of the trial court, the trial court in that case provided a means for objectively preserving the petitioner's examination.
[2] Here, it is unclear whether the trial court even applied the second prong of the applicable test. While the trial court weighed the evidence to determine whether the Respondents satisfied their burden of proving that no other qualified physician in the area would be willing to conduct the examination with counsel present or while it was taped, the trial court also noted that the foregoing standard, as set forth in Byrd, Freeman, and Broyles, was impractical. To the extent the trial court rejected this standard, the trial court clearly departed from the essential requirements of the law.
[3] This portion of our analysis also applies to that portion of the trial court's order which prohibits "two-way mirrors, or any other surreptitious or stealthy manner of eavesdropping on the examination."