980 So.2d 1096 (2008)
Sylvia MARAMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D06-3701.
District Court of Appeal of Florida, Second District.
January 25, 2008.
Rehearing Denied May 19, 2008.
*1097 Bob Dillinger, Public Defender, and Violet M. Assaid, Assistant Public Defender, Dade City, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Chief Judge.
Sylvia Maraman has raised an insanity defense to a pending charge of second-degree murder. In this certiorari proceeding she asks us to quash an order refusing to allow the videotaping of her court-ordered sanity examination. We grant the petition.
On the State's motion, the circuit court directed Maraman to submit to an examination by Dr. Jamie Barron, a clinical psychologist. Maraman appeared at Dr. Barron's office with her attorney and an investigator who planned to videotape the examination. Dr. Barron objected to the videotaping and refused to proceed. As a result, the State moved to strike Maraman's insanity defense, asserting that she had thwarted the State's ability to have an independent doctor evaluate her. Defense counsel responded with a motion to permit the examination to be videotaped.
The circuit court held an evidentiary hearing at which the defense presented testimony from Dr. Robert Berland, a forensic psychologist who practices in the criminal setting. Dr. Berland worked at the Florida State Hospital for seven years. He now has a full-time private practice in which he devotes the majority of his time to pretrial and postconviction proceedings in capital cases.
Dr. Berland testified that he has conducted many examinations that were videotaped and that he favors the practice. He observed that videotaping mental examinations is useful in evaluating the examiner's conclusions because a consulting expert reviewing the videotape may discover that no questions were asked in an important area or that the questions asked were of a type known by research to be ineffective. He further explained that this process was far more effective than attempting to review the examination based on a second-hand report by an attorney who attended it; lacking training or credentials in the mental health field, the attorney likely would not recognize or report many salient details.
Dr. Berland knew of no ethical prohibitions against videotaping examinations. He was unaware of any research that found the practice to be disruptive, although he acknowledged on cross-examination that the presence of a third-party observer can create potential for distraction or interruption. Even so, he noted that examinations in the criminal setting are prone to many potential contaminants, beginning with the fact that court-ordered examinations are inherently coercive. Dr. Berland observed that examinations in jails or prisons are not performed in sterile environments. He has conducted examinations in which guards were present, in which loud noises could be heard, and in which the subject defendants were in physical restraints. He stated that the tests employed in such examinations must be robust enough to withstand these and other contaminants and that different sources *1098 of information must be considered to reach valid findings.
The State presented testimony from Dr. Barron, the appointed expert in the case. She opposed the attendance of any third parties at examinations, citing concerns about the impact on the validity of the results and about the release of test questions that are used. Indeed, although Florida Rule of Criminal Procedure 3.216(d) allows for attendance by defense counsel and the prosecutor at sanity examinations, Dr. Barron would prefer that they did not attend, either. She referred generally to research showing that attendance by third parties may skew examination results.
Following the hearing the circuit court denied the motion to videotape. In a written order the court noted that, whereas rule 3.216(d) provides that attorneys for the state and defendant may be present at a court-ordered sanity examination, "[t]he rule does not say that the examination may be video taped over the objection of the examiner." This reasoning was faulty, as can be seen when examining the corresponding rule in civil cases.
Unlike the rule of criminal procedure permitting the attendance of counsel at court-ordered mental examinations, the rule governing compulsory examinations in civil cases makes no express provision for the attendance of anyone other than the examiner and the subject. Yet, case law provides that parties in civil cases are generally entitled to have their attorneys and court reporters or videographers attend both physical and mental examinations unless there are good reasons for excluding them. See, e.g., U.S. Sec. Ins. Co. v. Cimino, 754 So.2d 697, 701 (Fla. 2000) (holding that insured seeking PIP benefits was entitled to have attorney or videographer present at examination absent valid reason for exclusion); Broyles v. Reilly, 695 So.2d 832, 834 (Fla. 2d DCA 1997) (holding that, absent reason for exclusion, personal injury plaintiff was entitled to have court reporter present at physical exam and "[t]here is no reason that the presence of a videographer at an examination should be treated differently"); Toucet v. Big Bend Moving & Storage, Inc., 581 So.2d 952 (Fla. 1st DCA 1991) (finding departure from essential requirements of law in order excluding plaintiff's attorney from exam); Gibson v. Gibson, 456 So.2d 1320 (Fla. 4th DCA 1984) (holding that wife was entitled to presence of court reporter at psychiatric exam).
This right to the presence of others at a compelled examination appeared in the opinion by then Chief Judge Anstead in Gibson, 456 So.2d 1320. In that case, the court granted certiorari relief and quashed a trial court order that authorized the attendance of counsel at a court-ordered psychiatric examination but denied the examinee's request to have a court reporter present. Judge Anstead wrote that the petitioner should have the right "to preserve by objective means the precise communications that occur during the course of the examination," and he noted that "[b]oth the examiner and patient should benefit by the objective recording of the proceedings, and the integrity and value of the examination as evidence in the judicial proceedings should be enhanced." 456 So.2d at 1321. Gibson also noted that the examination implicated the petitioner's privacy, not the examiner's, such that the petitioner should be entitled to ensure that the intrusion was accurately preserved. 456 So.2d at 1321. Notably, Gibson did not derive its ruling from the rules of civil procedure; it relied on the dissenting view in Edwards v. Superior Court, 16 Cal.3d 905, 130 Cal.Rptr. 14, 549 P.2d 846, 849 (1976).
*1099 The State argues that this right is established only in the civil arena and it should not be extended to criminal cases. The supreme court rejected a similar argument in Cimino, 754 So.2d 697, in which an insurer argued that the right to the presence of an attorney or videographer had been established only in regard to examinations conducted pursuant to rule 1.360 and in workers' compensation cases but not to examinations of PIP insureds conducted pursuant to insurance statutes and policy provisions. Nevertheless, the court approved the holding of the First District that an insured who had claimed PIP benefits under her insurance policy was entitled to have her attorney or videographer present at an independent medical examination demanded by the insurer.
"It is well established that Florida follows a liberal view when determining whether attorneys may attend examinations," the court wrote. 754 So.2d at 701. "As a result, the First District concluded the burden should fall on the insurer to exclude an observer. We agree with this approach." Id. at 700-01 (citing Broyles, 695 So.2d at 834) (footnote omitted). The court could find no reason to treat PIP examinations differently than examinations under rule 1.360 or in workers' compensation cases. "Because the potential is there for an adversarial contest, the insured should be afforded the same protections as are afforded to plaintiffs for rule 1.360 and workers' compensation examinations." Id. at 701; see also Bartell v. McCarrick, 498 So.2d 1378, 1380 (Fla. 4th DCA 1986) (citing cases from foreign jurisdictions that describe adversarial nature of such examinations and noting that the opposing party's doctor "is not necessarily a disinterested, impartial medical expert").
Cases such as Gibson and Cimino demonstrate that Florida's liberal policy governing the attendance of third persons at examinations in adversarial settings is doctrinal; it is not limited to the specific terms of court rules, statutes, or insurance policy provisions, which may or may not address the question. We find no precedent or basis in the law for bestowing the protection of this doctrine only on civil claimants. To the contrary, the potentially adversarial nature of a court-ordered mental examination in a criminal case is self-evident, and the stakes  the defendant's liberty interests  are far higher than a civil litigant's monetary concerns. And, indeed, in one of the only cases addressing this issue in the criminal context, the First District found no basis for certiorari relief when the trial court denied a defense request to have his expert attend a neuropsychological exam, but its decision was without prejudice to a defense request on remand to have a videographer attend. Stephens v. State, 932 So.2d 563 (Fla. 1st DCA 2006).
Thus we conclude that it is a clearly established principle of Florida law that a person who is required to submit to a mental examination in an adversarial proceeding or setting is entitled to have the examination attended by her attorney and a court reporter or videographer, subject to the court's authority to limit attendance for good cause. The circuit court's conclusion to the contrary in this case, based on the criminal rule's provision for the presence of attorneys for the state and defense, was mistaken. In light of the principles discussed above, that rule cannot be read as a limitation on who may attend. Rather, it is a prohibition against the attorneys' exclusion.
The circuit court was also mistaken when it rejected the defense's argument that the State bore the burden to demonstrate why the videographer should be excluded from the examination. The law is clear that the burden of proof lies with the *1100 party opposing another's attendance. Broyles, 695 So.2d at 833.
The State's evidence was wholly insufficient to justify the exclusion in this case.
To satisfy this burden [to exclude a third party from an examination], the examining doctor must provide case-specific reasons why their presence would disrupt the examination. Once this test is satisfied, the party seeking to exclude third persons from the examination must prove at an evidentiary hearing . . . that no other qualified physician can be located in the area who would be willing to perform the examination with a court reporter present.
Freeman v. Latherow, 722 So.2d 885, 886 (Fla. 2d DCA 1998). Thus, Dr. Barron's general opposition to the presence of anyone at any examination was insufficient. See, e.g., McCorkle v. Fast, 599 So.2d 277, 278 (Fla. 2d DCA 1992) (rejecting doctor's objections to attorney's presence); Grooms v. Serv. Max Delivery & Installation, Inc., 953 So.2d 624 (Fla. 1st DCA 2007) (characterizing neuropsychologist's objections to videographer's presence  based on his professional standards, concern for test security and validity, and previous experience with videographer  as conclusory and insufficient to meet burden to exclude); Brompton ex rel. Brompton v. Poy-Wing, 704 So.2d 1127, 1128-29 (Fla. 4th DCA 1998) (rejecting doctor's "conclusory, general allegation that the presence of a third party would render the examination `invalid'" when "there was no factual basis concerning what the `methodology' was, what the examination itself would entail and why the mere presence of a non-interfering third party would render the examination invalid").
Moreover, the State made no effort to prove that no other qualified expert could be located who would be willing to examine Maraman in the presence of a videographer. See, e.g., Freeman, 722 So.2d at 886. In fact, Dr. Berland's testimony was to the contrary insofar as it demonstrated that Dr. Barron's objection was not universally held. Indeed, this court has observed that "[i]f the third party is there merely to record the event so that it is accurately preserved for future use, there should be few occasions when the doctor will have a valid objection." Wilkins v. Palumbo, 617 So.2d 850, 854 (Fla. 2d DCA 1993). This observation is all the more applicable here, in which the examination will already be attended by the attorneys pursuant to rule 3.216(d).
On the other hand, although the law did not require it to do so, the defense tendered good reasons for having the examination videotaped. This need was supported by Dr. Berland's testimony, in which he explained that an attorney was untrained in the field of mental health and may not notice critical details that would be noticed by an expert. See Edwards, 130 Cal.Rptr. 14, 549 P.2d at 849 ("[W]e do not think that an attorney, no matter how well intentioned, can fairly and objectively monitor such an examination. Psychiatry is a discipline requiring highly specialized skills."). Also, the attorney's presence itself would not satisfy the need for an objective record with which to confront the State's expert because the attorney would not normally be available to testify. See Stressman v. Lefler, 597 So.2d 308, 309 (Fla. 2d DCA 1992) (recognizing that although attorney may attend the exam, "[a]t trial, if he wished to contest the doctor's description on the examination, he would not be ethically authorized to testify").
In short, the law does not permit an examining expert to dictate whether others may attend the examination. To do so would impermissibly permit one party to *1101 limit the other's rights simply by selecting an expert who will only perform examinations without others present. The circuit court erred by failing to recognize Maraman's right to have a videographer present at her examination absent proof by the State of valid grounds for excluding him.
This brings us to the standard we apply in certiorari cases. To merit relief, the petitioner must show a departure from the essential requirements of law that has resulted in irreparable harm. State v. Pettis, 520 So.2d 250 (Fla. 1988). Virtually all of the cases on this topic arise in the context of certiorari petitions, in which orders excluding attorneys, court reporters, or videographers have been quashed for "the failure to follow the rule that places the burden of proof and persuasion on the party opposing the witnesses' attendance." Wilkins, 617 So.2d at 852. As has been seen, the circuit court failed to follow the same rule in this case.
We further conclude that Maraman has sufficiently demonstrated an irreparable harm because "it would be virtually impossible in an appeal following entry of a final order to demonstrate how the absence of the requested third party affected the outcome of the examination." Byrd v. S. Prestressed Concrete, Inc., 928 So.2d 455, 460 (Fla. 1st DCA 2006); see also Bartell, 498 So.2d at 1379 (concluding that certiorari relief was warranted in such circumstances "because we perceive that it may be impossible for petitioners to sufficiently demonstrate prejudice to rectify any error on plenary appeal").
Accordingly, we quash the order. On remand, if the State continues to object to the attendance of a videographer at Maraman's mental examination, it may present more detailed, case-specific evidence to meet its burden. See, e.g., Freeman, 722 So.2d at 887; Byrd, 928 So.2d at 457 (explaining that certiorari review allows appellate court to quash order but does not allow it to "direct the lower tribunal to enter any particular order").
Petition granted; order quashed; case remanded.
WHATLEY and SILBERMAN, JJ., Concur.